414 A.2d 1077

**COMMONWEALTH of Pennsylvania,**

**v.**

**Shields FRYE, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 8, 1978.

Filed Nov. 27, 1979.

John W. Packel, Assistant Public Defender, Chief, Appeals Division, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, submitted a brief on behalf of the Commonwealth, appellee.

Before PRICE, SPAETH and WATKINS, JJ.

PRICE, Judge:

Following a jury trial commenced on December 13, 1976, appellant was convicted[1] of one count of robbery.[2] Post-trial motions were denied by the court of common pleas en banc, and appellant was sentenced to a term of imprisonment of from two and one-half to fifteen years.

The pertinent facts are as follows. During the early morning hours of June 2, 1976, Mr. Harold Smith, a night watchman for the Dodge Steel Foundry in Philadelphia, was accosted by an armed individual who demanded the keys to the premises and, subsequent to their receipt, bound and gagged Mr. Smith. The individual, later identified by Mr. Smith as appellant, proceeded to remove several drums of chemicals from the storage area of the foundry, load them onto a rented U-haul pickup truck, and leave the premises. The police, working on information involving the presence and identification of a U-haul truck near the foundry shortly before a similar robbery staged two weeks prior to the instant episode, traced the rental of that truck to appellant. When the police arrived at appellant's residence, they discovered a U-haul pickup truck parked outside which contained metal drums bearing the name of the Dodge Steel Foundry. Upon being granted access to the residence by Ms. Patricia Harris, a co-tenant, the police discovered appellant, a set of keys to the U-haul truck, and a set of keys to the Dodge Steel Foundry storage room. Appellant was thereupon arrested and charged with the crime for which he stands convicted.

1. Appellant was also charged with two counts of criminal conspiracy (18 Pa.C.S. § 903) to which his demurrer was sustained, and one additional count of robbery (18 Pa.C.S. § 3701) to which the jury returned a verdict of not guilty.

2. 18 Pa.C.S. § 3701.

Appellant asserts several errors of the trial court, to-wit, that the court erred: (1) in instructing the jury that it could draw an adverse inference from the failure of appellant to call his common-law wife as a witness on his behalf; (2) by overemphasizing in its instructions to the jury the effect appellant's vital interest in the proceedings could have on the credibility of his testimony; and (3) in refusing to strike for cause two jurors who allegedly had hearing defects. For the reasons set forth herein, we affirm the judgment of sentence.

■ We find appellant's first argument waived. Appellant contends that Patricia Harris, with whom he was living at the time of the robbery, was his common-law wife, therefore precluding the court from giving a missing witness charge. See *Commonwealth v. Moore*, 453 Pa. 302, 309 A.2d 569 (1973). The charge stemmed from counsel's assertion, prior to presentation of appellant's case, that Patricia Harris would testify that on the date in question, appellant was at the residence they were sharing. Ms. Harris failed to appear at trial to testify and was deemed "unavailable" by appellant despite the fact that he was in frequent contact with her during his imprisonment, and that she appeared at prior court hearings.[3] In addition, the labelling of Ms. Harris' status as "common-law wife" is open to grave doubt in light of the fact that appellant was legally married to Rosa Frye during this time. Regardless of the dubious nature of appellant's contention, we do not reach the merits of the issue because appellant failed to preserve it by including it in his written post-trial motions. See Pa.R. Crim.P. 1123.[4] In his written post-trial motions appellant alleged that:

3. It is interesting to note that appellant refused an offer made by the court during trial to make available court resources to secure Ms. Harris' presence at trial (N.T. 422).

4. Pa.R.Crim.P. 1123 provides in pertinent part:
   "(a) Within ten (10) days after a finding of guilt, the defendant shall have the right to file written motions for a new trial and in arrest of judgment. Only those grounds may be considered which were raised in pre-trial proceedings or at trial, unless the trial judge,

"[t]he Trial Court erroneously charged that the jury might draw a negative inference from the absence of a corroborating witness, in violation of the presumption of innocence to which the defendant was entitled. Further, the court erred in finding this witness available to or exclusively in control of the defense."

Nowhere in his post-trial motions does appellant contend that this instruction was erroneous due to Ms. Harris' alleged status of "common-law wife." Our supreme court has recently re-emphasized the necessity of including *every* assignment of error in written post-trial motions. In reviewing the prior case law in this area, the court noted:

"In *Commonwealth v. Blair*, 460 Pa. [31] at 32 n.1, 331 A.2d [213] at 214 n.1 this Court on January 29, 1975, unanimously stated:

'The practice in some judicial districts of ignoring the requirements of Rule 1123(a) is condemned. Henceforth, issues not presented in compliance with the rule will not be considered by our trial and appellate courts.'

In *Commonwealth v. Terry*, 462 Pa. 595, 602 n.3, 342 A.2d 92, 96 n.3 (1975), this Court 'stress[ed] that written post-verdict motions filed subsequent to our decision in *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975), will be conclusive on the issues to be considered by the Court *en banc* and reviewable by appellate tribunals.' And in *Commonwealth v. Grace*, 473 Pa. 542, 546, 375 A.2d 721, 723 (1977), this Court 'again remind[ed] counsel that written post-verdict motions must be filed and these motions must include every assignment of error which counsel wishes to preserve for appellate review.' *Commonwealth v. Hilton*, 461 Pa. 93, 95 n.1, 334 A.2d 648, 649 n.1 (1975)." *Commonwealth v. Twiggs*, 485 Pa. 481, 482–483, 402 A.2d 1374, 1375 (1979).

upon cause shown, allows otherwise. Argument shall be scheduled and heard promptly after such motions are filed, and only those issues raised and the grounds relied upon in the motions may be argued. If the grounds asserted do not require a transcript, neither the filing nor argument of post-verdict motions shall be delayed for lack of a transcript of the notes of testimony."

Because appellant failed to raise in post-trial motions the alleged error in the court's charge as a result of the "common-law marriage" between himself and Ms. Harris, we hold that the issue is waived.[5]

■ Appellant's next contention of trial error is that the trial court gave the jury an improper charge concerning the issue of credibility. The specific charge in issue is the following:

"In considering the credibility of defendant's testimony, it is proper for you to consider that defendant took the witness stand as a witness and became a witness on his behalf. Because of this fact, his credibility, like that of any other witness, is a matter of importance to you. You may consider that he is an interested witness vitally concerned about the outcome of the case. While it does not necessarily follow from the fact that he is an interested witness that he would tell an untruth while under oath or while on the witness stand, nevertheless, it is a circumstance which along with other circumstances is for your consideration when you come to appraise his testimony." (N.T. 600–01).

Appellant asserts that this type of instruction is prejudicial because, *inter alia*, "it does not distinguish between a truthful and a non-truthful defendant . . . [and] it conveys to the jury that appellant is committing perjury . . . ." (Appellant Brief at 31–32). We find this argument to be devoid of merit. We have consistently held that a trial judge may properly instruct a jury that it may consider the defendant's interest in the case when evaluat-

---

5. The fact that the lower court en banc considered appellant's argument is of no consequence. A somewhat similar situation arose in *Commonwealth v. Twiggs, supra,* wherein our supreme court stated: "[d]espite our express January 1975 mandate in *Blair* that 'issues not presented in compliance with the rule will not be considered by our trial and appellate courts,' the post-verdict court nonetheless undertook to consider and decide the issues on its own motion. Such action by the trial court does not alter this Court's rule that issues not raised in post-verdict motions will not be considered by our trial or appellate courts." *Commonwealth v. Twiggs,* 485 Pa. at 484, 402 A.2d at 1376.

ing his credibility.[6] *Commonwealth v. Green*, 251 Pa.Super. 318, 380 A.2d 798 (1977); *Commonwealth v. Matt*, 248 Pa.Super. 538, 375 A.2d 371 (1977); *Commonwealth v. Dolny*, 235 Pa.Super. 241, 342 A.2d 399 (1975).

Appellant's final contention is that the trial court erroneously denied his challenge for cause with respect to two jurors who purportedly had hearing difficulties. These prospective jurors were eventually excluded from the jury panel through appellant's use of peremptory challenges.

In reviewing the decision of the trial court denying appellant's challenges for cause, we are mindful that such decisions are matters within the court's discretion and will not be disturbed on appeal absent an abuse of that discretion. *Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977); *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975). The trial judge is in a much better position to evaluate the situation than we because he saw the prospective jurors and heard their responses on voir dire. *See Linsenmeyer v. Straits*, 402 Pa. 7, 166 A.2d 18 (1960). In the instant case, we perceive no abuse of discretion by the trial court. The two jurors in question answered the inquiries of the court

6. In support of his argument, appellant cites a footnote from the supreme court decision in *Commonwealth v. Zapata*, 455 Pa. 205, 211 n.3, 314 A.2d 299, 303 n.3 (1974), for the proposition that a defendant's interest in the outcome of his own case is obvious to all concerned and "does not therefore require special emphasis." However, as we elucidated in *Commonwealth v. Matt, supra*, that principle is inapposite to situations such as presented in the instant case:

"Appellant urges, however, that a footnote in *Commonwealth v. Zapata*, 455 Pa. 205, 211, n.3, 314 A.2d 299, 303, n.3 (1974) prevails. While it is true the Court in *Zapata* did state, in passing, that a defendant's interest in a case did not require special emphasis, the Court was referring to a different means of impeachment— the practice of impeaching a defendant's credibility as a witness by showing that he has been indicted in a related case. Because the defendant's interest in the case being tried is already a factor to be considered by the jury in determining his credibility, proof of related offenses may be far more prejudicial than it is relevant. Obviously, therefore, *Zapata* is not on point; it had nothing to do with the long-standing rule that the instant charge on credibility was appropriate. *See Commonwealth v. Tauza*, 300 Pa. 375, 150 A. 649 (1930)." *Commonwealth v. Matt*, 248 Pa.Super. at 544, 375 A.2d at 374.

quickly and lucidly. The only incident where questions were asked to be repeated appears to be more the result of the juror not understanding the meaning of the words "reside" and "impediment", than his not being able to hear the words. (*See* Partial N.T. 44–45). When alerted to potential hearing difficulties, the court asked the two jurors additional questions and determined that one juror merely had difficulty understanding words when someone spoke too quickly, while the other juror only had difficulty when microphone distortion was present. The record supports these conclusions, and we will not disturb them on appeal.

Accordingly, judgment of sentence is affirmed.

SPAETH, J., concurs in the result.